UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
HAROLD TAYLOR,                      )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Civil Action No. 15-1700 (RBW)
                                    )
HOWARD UNIVERSITY, et al.,          )
                                    )
        Defendants.                 )
_____ )

# MEMORANDUM OPINION

The plaintiff, Harold Taylor, brings this action against the defendants, Howard University (the "University"), Howard University Faculty Practice Plan, and Jeanette Gibbs, asserting claims of employment discrimination on the basis of gender and hostile work environment under the District of Columbia Human Rights Act, D.C. Code Ann. §§ 2-1401.01–2-1403.16 (West 2001), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 (2012). See generally Complaint ("Compl."). The complaint also asserts claims for tortious bad faith and wrongful discharge in violation of public policy under District of Columbia common law. Id. Currently before the Court is the defendants' Partial Motion to Dismiss ("Defs.' Mot."), which seeks to dismiss the claims asserted against defendant Gibbs, as well as Counts II (tortious bad faith) and IV (wrongful discharge in violation of public policy) of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon careful consideration of the parties' submissions, the Court concludes that it must grant in part and deny in part the defendants' partial motion to dismiss.[1]

---

[1] In addition to the documents already identified, the Court also considered the following submissions in rendering
(continued . . .)

## I. BACKGROUND

The plaintiff alleges the following in his Complaint. From August 26, 2013, to November 5, 2014, the plaintiff was employed by the Howard University Faculty Practice Plan as the Director of Professional Billing. Compl. ¶ 12. Upon being hired for this position, the plaintiff relocated from Florida to Washington, D.C. in the summer of 2013 and was provided with housing near the University as a privilege of his employment. Id. ¶ 15. The plaintiff's "duties included, but were not limited to, managing the billing and collection of professional medical fees, ensuring that the collection process of such fees w[as] in compliance with municipal, state, [and] federal regulations, and supervising employees in the billing department." Id. ¶ 13.

Defendant Gibbs, who was the "Associate Vice President for Administration and Operations" and "the [p]laintiff's direct supervisor," id. ¶ 6, allegedly told the plaintiff that he could live in the University-provided house as long as he remained employed by the Howard University Faculty Practice Plan, id. ¶ 15. Shortly after the plaintiff began his employment, the plaintiff's "fiancée and minor children relocated and joined him [in Washington, D.C.] on or about December 19, 2013." Id. ¶ 16. The plaintiff alleges that when Gibbs learned that his family had joined him as residents in the house provided by the University, "she demanded that the [p]laintiff immediately vacate the premises." Id. ¶ 17. In contrast to this demand, "all female employees that had occupied the aforementioned premises with or without their families were allowed to occupy the premises as long as it was their pleasure to do so." Id. ¶ 18.

---

( . . . continued)
its decision: (1) the Defendants' Memorandum of Law in Support of Partial Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Memorandum of Law in Support of Its Opposition to Defendant[s'] Partial Motion To Dismiss ("Pl.'s Opp'n"); and (3) the Defendants' Reply Memorandum in Support of Partial Motion To Dismiss ("Defs.' Reply").

Shortly after the plaintiff commenced his employment, "he noticed that the billing department was violating the law by submitting medical records and bills to federally funded healthcare programs and private insurance companies for services rendered by physicians that had not been properly credentialed." Id. ¶ 30. The plaintiff brought his concerns regarding the billing department's practices to Gibbs' attention, but she refused to take any action. Id. ¶ 31. The plaintiff then "reported the illegal billing practices to the Clinical Chairs, who in turn contacted [] Gibbs[,] and shortly thereafter, the [p]laintiff was suspended and subsequently terminated for allegations of sexual misconduct." Id. ¶ 32. The plaintiff requested that the defendants provide "the names of the persons [] he was being accused of sexually harassing, [the] dates such harassment occurred, and the conduct that constituted sexual harassment," but his requests were denied. Id. ¶ 33. The plaintiff contends that the University's investigation of the sexual misconduct charges against him was a "sham." Id. ¶ 35. Further, the plaintiff contends that complaints of sexual misconduct committed by female employees were not taken seriously while "allegations of sexual misconduct [by] male employees result[ed] in severe adverse actions regardless of the truth of the matter." Id. ¶ 36.

The plaintiff also contends that "[o]n numerous occasions, the [p]laintiff was subjected to embarrassing and humiliating treatment in front of female co-workers." Id. ¶ 20. For instance, "any time that the [p]laintiff attempted to counsel or discipl[ine] a female subordinate, [] Gibbs would usurp the [p]laintiff's authority and tell the female subordinates to ignore [his] . . . directives and/or discipline." Id. ¶ 22. Gibbs allegedly "created an environment [that] undermin[ed] the [p]laintiff's authority [and] resulted in the [p]laintiff's subordinates refusing to accept instructions, directives, or counseling from him." Id. ¶ 26. "[W]henever the [p]laintiff attempted to correct, discipline[,] or reprimand his female subordinates, they would go to a

3

female manager and complain . . . . The female manager would go to [] Gibbs and the matter would be taken out of the [p]laintiff's hands." Id. ¶ 27.

Further, "all female senior executives were issued company credit cards," but the plaintiff's request for a company credit card was denied, even though he was a senior executive, because "Gibbs did not believe that a man could handle the responsibility of a company credit card." Id. ¶¶ 23–24. As a result, the plaintiff was "forced to pay [for] his company[-]related expenses out-of-pocket and wait months to be reimbursed, causing the plaintiff and his family undue hardship." Id. ¶ 25.

The plaintiff was also warned that "if the central billing office was not successful, [] he would be fired," even though "none of the female managers that were similarly situated and just as responsible for the billing office were threatened with termination if the central billing office was not successful." Id. ¶ 21. Although the plaintiff "performed his job by either meeting or exceeding expectations," Gibbs gave the plaintiff "an unfavorable performance evaluation as compared to female employees[,] which resulted in loss of promotional opportunities." Id. ¶ 28. The plaintiff also alleges that "Gibbs promoted unqualified female employees to executive positions." Id. ¶ 29.

The plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"), and a Notice of Right to Sue was issued by the EEOC on July 8, 2015. Id. ¶ 3. The plaintiff then filed this case on October 13, 2015, asserting claims of gender discrimination/disparate treatment (Count I), id. ¶¶ 37–41; tortious bad faith (Count II), id. ¶¶ 42–47; hostile work environment (Count III), id. ¶¶ 48–51; and wrongful discharge in violation of public policy (Count IV), id. ¶¶ 52–54. The defendants' partial motion seeks to dismiss Counts II and IV and the claims asserted against defendant Gibbs.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether the complaint properly "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a) requires only that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But although "detailed factual allegations" are not required, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), a plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," id. Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A complaint alleging "facts [which] are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

"In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" Hettinga v. United States, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## III. ANALYSIS

### A. The Plaintiff's Tortious Bad Faith Claim (Count II)

The plaintiff asserts a claim against the defendants for "tortious bad faith," alleging that when "[t]he [p]laintiff was accused of sexually harassing employees . . . the [d]efendants denied the [p]laintiff fundamental fairness by refusing to provide him with any specific factual allegations in an effort to prevent him from properly defending himself," Compl. ¶ 44, resulting in "direct and consequential damages," id. ¶ 46. Relying primarily on Jacobsen v. Oliver, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) (quoting Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 92 (3d Cir. 2000)), the defendants argue that this claim should be dismissed because no independent cause of action for a breach of a duty of good faith may proceed when the allegations are "identical to other claims for relief under established causes of action," Defs.' Mem. at 6, and that the plaintiff's allegations in this claim "are precisely the same allegations he uses to support his claims for discrimination," id. at 7.[2]

The court in Jacobsen, a case primarily involving claims for legal malpractice, dismissed the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing with little analysis, stating only that "[t]he Court will dismiss [the implied duty claim], since it is identical to [the legal malpractice claim], and there is no independent cause of action for an implied covenant of good faith and fair dealing with respect to an attorney's representation of a client." 201 F. Supp. 2d at 98 n.2. Determining whether the Court should be persuaded by Jacobsen's reasoning turns, as a threshold matter, on whether Count II of the Complaint here, which is

---

[2] The defendants also assert that a contract-based cause of action is unavailable here because the plaintiff was an "at-will employee," Defs.' Mem. at 6, but this assertion incorrectly assumes that an "at-will" employee cannot have an employment contract with his or her employer, see Ames v. HSBC Bank, USA, N.A., No. 06-2039, 2007 WL 1404443 at *2 (D.D.C. May 11, 2007) ("At-will employment should not be viewed as the absence of contract, but as a species of contract, a principle well settled in the District of Columbia."). The Court therefore rejects this argument, and in any event, the Court observes, infra at 7, that the Complaint fails to identify any contractual obligation that was allegedly breached.

6

labeled as a claim for "tortious bad faith," sounds in contract or tort is unclear. The plaintiff alleges that the defendants'

> discriminatory practices against [him] caused him to sustain and continue to sustain direct and consequential damages, including but not limited to, physical and emotional pain, mental anguish, humiliation and embarrassment, damages to his professional reputation and development, loss of income and other economic benefits, job search costs, loss of future employment opportunities, and the impairment of future earning capacity, justifying an award of compensatory damages [in an] amount to be determined by a jury at trial.

Compl. ¶ 46. The claim therefore appears to seek extra-contractual remedies for the alleged harm caused by the defendants' conduct, suggesting that Count II sounds in tort rather than contract. See generally Trusted Integration, Inc. v. United States, 679 F. Supp. 2d 70, 82 (D.D.C. 2010) ("To determine whether plaintiff's claims are essentially contract actions, the Court considers 'the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'" (quoting Megapulse, Inc v. Lewis, 672 F.2d 959, 968 (D.C. Cir. 1982))); cf. Choharis v. State Farm Fire & Cas. Ins. Co., 961 A.2d 1080, 1087–88 (D.C. 2008) (refusing to recognize a tort claim of bad faith challenging an insurance company's handling of a claim because the plaintiff could pursue his claim and obtain a remedy pursuant to the implied duty of good faith and fair dealing imputed to the insurance policy). However, the plaintiff asserts in his opposing brief that he alleges a violation of the implied duty of good faith and fair dealing imputed to every contract, see Pl.'s Opp'n at 3 ("The plaintiff contended in his complaint that he was . . . subjected to disparate treatment and unfair treatment, pursuant to the application of the defendants' policies and procedures . . . . Therefore, the [C]ourt can draw a reasonable inference that the plaintiff's employment was governed by a contract, thus creating an implied duty of good faith and fair dealing." (citing Compl. ¶¶ 8, 34)). But nowhere in the Complaint does the plaintiff <u>identify</u> the contractual terms or obligations underlying his bad faith

7

claim, see generally Compl.; see also, e.g., Mero v. City Segway Tours of Wash. D.C., 826 F. Supp. 2d 100, 107 (D.D.C. 2011) ("The Court has already determined that the plaintiff fails to allege the existence of an enforceable contract at all, and the absence of a contract alone is sufficient to defeat the implied covenant claim."), and the Court is unpersuaded by the plaintiff's re-casting of the Complaint's allegations through arguments made in his opposition, see Arbitraje Casa de Cambio, S.A. v. United States Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). The Court therefore rejects the defendants' arguments to the extent they rely on the reasoning set forth in Jacobsen.

The Court is equally unpersuaded by the defendants' broader assertion, i.e., that the allegations in the plaintiff's tortious bad faith claim are duplicative of the plaintiff's gender discrimination claim and must therefore be dismissed. Defs.' Mem. at 7 ("[The p]laintiff's 'bad faith' claim asserts that his termination was a result of gender discrimination . . . [a]nd that the investigation that preceded it denied the [p]laintiff 'fundamental fairness.' Compl. ¶¶ 43–47. These allegations are precisely the same allegations he uses to support his claims for discrimination."). But Rule 8(d)(2) and (3) allow plaintiffs to plead alternative theories for relief, Fed. R. Civ. P. 8(e)(2) ("A party may set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones"); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); see also Harvey v. Kasco, 109 F. Supp. 3d 173, 178–79 (D.D.C. 2015) (recognizing that a party may allege multiple theories of liability), and absent a persuasive argument from the defendants that the plaintiff's tortious bad faith claim may not proceed as an

alternative theory of liability, the Court is not prepared at this early stage to dismiss that claim. Accordingly, the Court will deny the defendants' motion to dismiss Count II of the Complaint.

**B.       The Plaintiff's Wrongful Discharge in Violation of Public Policy Claim (Count IV)**

The plaintiff asserts a claim against the defendants for wrongful discharge in violation of public policy based on the allegation that the plaintiff was terminated "[a]s a direct and proximate result of the [p]laintiff's complaints to the [d]efendants that [Howard University Faculty Practice Plan] was engaging in illegal billing practices in violation of federal and local law." Compl. ¶ 53. The defendants move to dismiss this claim because the plaintiff "has not identified a statute or regulation which would support the purported public policy violation," Defs.' Mem. at 7; see also Defs.' Reply at 6, and the Court agrees.

Even assuming for the sake of argument that the Complaint sufficiently alleges the existence of an employment contract between the plaintiff and the defendants, see supra at 6–8 (concluding that the Complaint does not identify any contractual obligation that would support a bad faith claim predicated on the implied covenant of good faith and fair dealing), "[i]t has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all," Adams v. George W. Cochran & Co., 597 A.2d 28, 30 (D.C. 1991) (citing cases). However, in Adams, the District of Columbia Court of Appeals recognized the following "very narrow" public policy exception to the at-will employment doctrine: "a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." Id. at 34. The District of Columbia Court of Appeals further held in Carl v. Children's Hospital, 702 A.2d 159, 160 (D.C. 1997), that it is possible to recognize additional public policy exceptions to the at-will doctrine. However,

9

because these are narrow exceptions to the general rule, "the public policy exception to the at-will doctrine must be 'solidly based on a statute or regulation that reflects the public policy to be applied or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct.'" Hoskins v. Howard Univ., 839 F. Supp. 2d 268, 281 (D.D.C. 2012) (Walton, J.) (citing Brown v. Children's Nat'l Med. Ctr., 773 F. Supp. 2d 125, 139 (D.D.C. 2011)).

In cases in which the alleged wrongful discharge claim survived a motion to dismiss, the plaintiff specifically identified the statute or regulation underlying the wrongful discharge claim. See, e.g., Fingerhut v. Children's Nat'l Med. Ctr., 738 A.2d 799, 806 (D.C. 1999) ("Fingerhut relies on public policies imbedded in three statutory provisions to support his wrongful discharge claim . . . , [D.C. Code] §§ 22-704, 4-142 and 4-175."); Washington v. Guest Servs., Inc., 718 A.2d 1071, 1072 (D.C. 1998) (noting that the plaintiff attempted to ensure compliance with District of Columbia health and food regulations). Here, although the plaintiff makes vague references to "federal and local law" that were allegedly violated by the defendants' "illegal billing practices," Compl. ¶ 53, the Complaint is devoid of any reference to a specific statute or regulation that supports the alleged public policy violation, see generally Compl. Accordingly, the Court will grant the defendants' motion to dismiss Count IV of the Complaint.

**C.  The Plaintiff's Claims Against Defendant Gibbs**

The defendants move to dismiss the claims against Gibbs on the ground that the plaintiff has failed to effect service of process on her. Defs.' Mem. at 4–5. Setting aside the procedural flaw in the defendants' motion, i.e., moving under Rule 12(b)(6) to dismiss a plaintiff for failure of service of process despite the availability of a motion to dismiss pursuant to Rule 12(b)(5), see generally Defs.' Mem. (relying solely on Rule 12(b)(6) in support of their arguments for dismissal), the defendants are nonetheless correct regarding Rule 4(m)'s requirements, see Fed.

R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). And given that the complaint was filed nearly nine months ago in October 2015, and the fact that the plaintiff, who is represented by counsel, responded to the defendants' arguments regarding his failure to serve Gibbs, which shows that he had ample notice of that failure by at least January 2016, the Court will dismiss the claims against Gibbs without prejudice for failure to effect service of process on her pursuant to Rule 4(m).[3]

## IV. CONCLUSION

For the reasons stated herein, the Court grants the defendants' motion to dismiss Count IV of the Complaint and the claims asserted against defendant Gibbs. However, the Court denies the defendants' motion to dismiss Count II of the Complaint.

**SO ORDERED** this 28th day of July, 2016.[4]

REGGIE B. WALTON<br>United States District Judge

---

[3] Because the Court is dismissing the claims against Gibbs for failure to serve her, the Court does not reach the defendants' alternate grounds for dismissing the claims against Gibbs. See Defs.' Mem. at 5–6.

[4] The Court shall contemporaneously issue an Order consistent with this Memorandum Opinion.